UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:24-cv-24842 GOODMAN

BENNY LEE HEYWARD

               Plaintiff,

v.

FRANK BISIGNANO,
*Comm'r of Soc. Sec.*,

               Defendant.
_____/

## *OMNIBUS* ORDER
## ON SUMMARY JUDGMENT MOTIONS[1]

This case challenges a denial of social security benefits. Plaintiff Benny Lee Heyward ("Plaintiff") and Defendant Frank Bisignano, Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), filed cross-motions for summary judgment. [ECF Nos. 7; 8]. The Commissioner's summary judgment motion

---

[1]  Pursuant to Administrative Order 2023-18, the undersigned United States Magistrate Judge has been assigned as the presiding Judge for all purposes in this case, including entering a dispositive order and final judgment. The Administrative Order permits any party to object to Magistrate Judge jurisdiction "by filing a motion for case reassignment within whatever deadline the Magistrate Judge gives the parties." The Undersigned issued an Order [ECF No. 4] advising the parties of their right to object. Neither party filed objections, and they therefore consented to the exercise of jurisdiction by a United States Magistrate Judge.

also served as his opposition response to Plaintiff's motion. Plaintiff filed a reply that also served as his oppositional response. [ECF No. 10].

As explained below, the Court **grants** Defendant's summary judgment motion [ECF No. 8] and **denies** Plaintiff's summary judgment motion. [ECF No. 7].

I.      **Procedural and Factual Background**

Plaintiff filed an application for social security supplemental security income ("SSI") on May 9, 2023, alleging a disability onset date of September 1, 2022. After the State agency disability determination service ("DDS") denied his claim, Administrative Law Judge Lornette Reynolds ("the ALJ") held a hearing. (R. 1–62).[2] Plaintiff was represented by counsel. Additionally, Pamela Leggett testified as a vocational expert ("VE") during the hearing. (R. 55). The hearing occurred on August 2, 2024 and the ALJ issued an unfavorable decision on August 30, 2024. (R. 37-62; 17–31). Plaintiff requested a review of the decision but the Commissioner's Appeals Council ("AC") denied it on May 15, 2024. (R. 1–7). Thus, the Commissioner's final decision is now subject to review.

Plaintiff filed his motion for summary judgment. [ECF No. 7]. In it, he argues that: the AC improperly found that the submitted rebuttal VE evidence was not material. Defendant's motion argues that the ALJ's decision should be affirmed because it is supported by substantial evidence, and because Plaintiff failed to show that the

---

[2]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 6].

submitted rebuttal evidence rendered the ALJ's decision erroneous and that he failed to meet his burden of being unable to perform his past relevant work. [ECF No. 8].

## II. Applicable Legal Standards

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's [RFC]; and then determine:

4. **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in

the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

### *Standard of Review*

The Social Security Act provides for a highly deferential standard of review: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has interpreted the substantial evidence standard and concluded that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154 (2019); *see also Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (under the substantial evidence standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

As the Eleventh Circuit has stated, even if the record preponderates against the Commissioner's decision, and a reviewing court would resolve the disputed factual issues differently than the Commissioner, the court will affirm so long as substantial evidence supports the Commissioner's findings. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("[a] preponderance of the evidence is not required.").

The Court is authorized to enter a judgment affirming, modifying, or reversing the

4

decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

**III.      The ALJ's Findings**

In denying Plaintiff's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 17–31). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 1, 2022, the alleged disability onset date. (R. 19).

At step two, the ALJ concluded that the following medical conditions qualified as severe impairments for Plaintiff: osteoarthritis; degenerative disc disease of the spine; hypertension; and status post proctectomy. (R. 19). The ALJ stated that those impairments "significantly limit the ability to perform basic work activities[.]" (R. 20).

At step three, the ALJ concluded that Plaintiff did not have an "impairment or combination of impairments that met or medically equaled the severity" of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526*).* (R. 22).

At step four, after a review of the entire record, the ALJ concluded that Plaintiff had the RFC to perform light work with some limitations. *Id*. The limitations are: (1) frequently climb ramps and stairs; (2) occasionally climb ladders, ropes, or scaffolds; (3) can occasionally stoop, kneel, crouch, and crawl; (4) no limitations as to balancing; (5) can frequently reach in all directions with both upper extremities; (6) can do jobs that can be

performed with occasional use of urinary incontinence protection. *Id*.

In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." *Id*. The ALJ additionally "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." *Id*.

Finally, at step five, the ALJ found that Plaintiff is capable of performing past relevant work as a bodyguard. (R. 30).

Accordingly, the ALJ held that Plaintiff had not been under a disability from September 1, 2022 through the date of her decision, August 30, 2024. (R. 31).

## IV.   Analysis

As previously stated, Plaintiff argues that the AC erred in finding that the rebuttal VE evidence was immaterial. [ECF No. 7]. Defendant's Motion argues that the ALJ's decision should be affirmed because it is supported by substantial evidence, and because Plaintiff failed to show that the submitted rebuttal evidence rendered the ALJ's decision erroneous and failed to meet his burden that he could not perform his past relevant work. [ECF No. 8].

Plaintiff states that the AC's decision on the rebuttal evidence "is reviewable to determine whether the evidence raises a reasonable probability that the decision could

change if considered by the ALJ." [ECF No. 7, p. 4]. The Eleventh Circuit in *Bailey v. Soc. Sec. Admin., Comm'r*, provided a brief overview of the relationship between the AC and rebuttal evidence:

> Generally, a claimant may present new evidence at each stage of the administrative review process. 20 C.F.R. §§ 404.900(b), 404.970(b) (2016); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015). Although the [AC] has the discretion to deny review of an ALJ's decision, 20 C.F.R. § 404.967, the [AC] must consider any "new, material, and chronologically relevant evidence" the claimant submits, and "must review the case if 'the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b) (2016)). When the [AC] erroneously refuses to consider new evidence, it commits legal error, and remand is appropriate. *Washington*, 806 F.3d at 1321.
>
> New evidence must not be cumulative of other evidence in the record. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2016). The evidence is material if "a reasonable possibility exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).
>
> When the [AC] considers the "new evidence but denie[s] review because, even in light of the new evidence, there [is] no error in the ALJ's decision," there is generally no requirement for "the [AC] to provide a detailed discussion of a claimant's new evidence when denying a request for review." *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783-84 (11th Cir. 2014). If, on the other hand, the [AC] decides to review the ALJ's decision, it must adequately evaluate the new evidence rather than " 'perfunctorily adhere[ ]' " to the ALJ's decision. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984) (quoting *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).

782 F. App'x 838, 843 (11th Cir. 2019) (footnotes omitted).

Here, Plaintiff's rebuttal evidence is dated October 4, 2024—less than two months after the ALJ issued her decision. (R. 8; 31). It includes a letter from Karen Starr, an accredited disability representative, rebutting the VE's hearing testimony. (R. 8–13 ("Starr Report")).[3] Starr rendered her own opinion based on the limitations the ALJ presented to the VE at the hearing. *Id*. Starr's opinion relied upon "the current information about how jobs are performed that is collected by the United States Department of Labor ("US DOL")/Bureau of labor statistics, in particular the Occupational Requirements Survey ("ORS"), the O*Net, and of course, the DOT." *Id*.[4] She concluded that "an individual limited as described by the ALJ cannot perform the job of bodyguard." (R. 9). The AC, in reviewing the Starr Report, found that it "[did] not show a reasonable probability that it would change the outcome of the decision." (R. 2).

Specifically, Starr highlights the differences between the DOT's bodyguard description (which she states was last updated in 1977),[5] and the "up-to-date data

---

[3] The Starr Report also includes her curriculum vitae (R. 11-13), and a screenshot from the United States Bureau of Labor Statistics website listing two types of security guard occupations (R. 10).

[4] Starr states that the SSA "is currently using the ORS and O*NET to update its 'vocational library,' given that the DOT has not been updated in years, because it is an up-to-date source that [she] ha[s] also come to rely upon in providing vocational testimony and analysis." (R. 8).

[5] During the hearing with the ALJ, Plaintiff's attorney, in questioning the VE, stated that, "I note the DOT is **somewhat updated**." (R. 59 (emphasis added)). Additionally, Plaintiff's counsel asked the VE whether "the bodyguard description in the DOT [is]

provided by the US DOL[.]" (R. 8). The DOT describes the job of "bodyguard" as someone who: "[e]scorts individuals to protect them from bodily injury, kidnapping, or invasion of privacy. May perform other duties, such as receiving and transcribing dictation or driving motor vehicle to transport individuals to disguise purpose of employment." *Id*.

Starr agrees that "a number of tasks associated with 'the protection [of individuals] from bodily injury, kidnapping, or invasion of privacy,' almost certainly are light tasks[.]" *Id*. "However, it is **impossible to reasonably classify the actual physical engagement with another human being as a 'light' task**, and certainly the possibility **always exists** that this would be **necessary** in the case of a personal assault on the guarded individual." *Id*. (emphasis added).

Starr attached a screenshot from the US DOL to her report. This screenshot listed the 2023 estimate percentages for security guard workers given the choice of sitting or standing and those where gross manipulation is required. (R. 10). "Consistent with common sense, gross manipulation is required for more than 99.5% of individuals performing this job, and they have little or no control over positions such as sitting versus standing, while they are working. This is obviously related to the nature of the job itself." (R. 8). Starr argues that due to the daily risk of potentially having to subdue another person, the "bodyguard" occupation is not "light work;" and that if an applicant cannot

---

consistent with what bodyguards would be doing within the (sic) five years[,]" and the VE replied, "Yes, I believe so." (R. 59–60).

9

"exert greater than light gross manipulation, pushing or pulling, etc., then they are simply not fit to perform the job." (R. 9).

Plaintiff argues that the Starr Report directly contradicts the VE's testimony, and that "[t]he question presented is whether the AC properly excluded this evidence without comment to guide this Court in performing its task of judicial review, particularly where, as here, the [Starr] [R]eport so plainly contradicts the vocation evidence the ALJ relied upon to deny Plaintiff's claims." [ECF No. 7, p. 9].

But Plaintiff notably concedes that the AC is not required to "provide an explanation." *Id*. at 7 (emphasis removed) (citing *Medders v. Soc. Sec. Admin., Comm'r*, No. 21-11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (ALJs "need not give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." (quoting *Mitchell*, 771 F.3d at 783–84)).

Here, the AC plainly stated that it reviewed the Starr Report and that the report did "not show a reasonable probability that it would change the outcome of the decision." (R. 2). Plaintiff argues that the AC should have detailed its reasoning more "to guide this Court in performing its task of judicial review[.]" [ECF No. 7, p. 9]. The Undersigned disagrees.

As Defendant argues, it is Plaintiff's burden to prove he is disabled within the meaning of the Social Security Act. [ECF No. 8, p. 4 (citing 42 U.S.C. §§ 423(d)(1)(A), (d)(5)(A); 20 C.F.R. § 404.1529(a); *Ellison*, 355 F.3d at 1276)]. It is also his burden to prove

10

his inability to perform his past relevant work. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Plaintiff has not shown "that the evidence submitted to the [AC] undermine[s] the substantial evidence supporting the ALJ's findings and conclusion that Plaintiff was not disabled." [ECF No. 8, p. 5].

Neither Plaintiff's motion nor the Starr Report illustrate *why* he is unable to perform his past work as generally performed. For example, the Starr Report highlights how "gross manipulation is required for more than 99.5% of individuals performing the job" but fails to discuss how, based on the record evidence (with citations to specific examples), Plaintiff is **unable** to meet that requirement. (R. 8–9). Additionally, as Defendant points out, the assumed limitations do **not** "include any limitations on Plaintiff's manipulative abilities." [ECF No. 8, p. 7].

The Starr Report also emphasizes the likelihood of having to subdue a problematic person, and states that "if an individual applying for the job of the bodyguard would . . . say that they could not exert greater than light gross manipulation . . . then they are simply not fit to perform the job." (R. 9). But again, the report and motion fail to discuss Plaintiff's *specific* issues related to gross manipulation. They also fail to elaborate on how frequently those kinds of situations (*i.e.*, the need to subdue a problematic person) arise or how often Plaintiff experienced them (if he experienced them) while he was working as a bodyguard.

If Plaintiff had encountered such situations, then he should have alerted the ALJ to them or, alternatively, he could have had Starr interview him and cause her to incorporate his experience as a bodyguard in her report. The Starr Report, without discussing why Plaintiff is unable to perform his past work, serves merely as a general discussion of whether *anyone* with the assumed limitations can be a bodyguard. As Defendant states, it fails to "undermine the substantial evidence supporting the ALJ's findings." [ECF No. 8, p. 7].

Plaintiff concedes that the Starr Report "does not identify work-related limitations—rather, consistent with her expertise, [Starr] has addressed the job at issue and why *the ALJ's own RFC* does not permit performance of it." [ECF No. 10, p. 3 (emphasis in original)]. However, as previously stated, the Starr Report addresses limitations (*i.e.,* gross manipulation, control over sitting versus standing while working) that were **not included** in the ALJ's RFC.[6] In fact, it barely addresses the limitations included within the RFC.

"The claimant has the burden of proving the inability to perform past relevant work. **If the claimant's evidence shows an inability to perform past relevant work, the**

---

[6] The RFC was: light work; except that Plaintiff can occasionally climb ladders, robes, and scaffolds and frequently climb ramps and stairs. He can occasionally stop, kneel, crouch, and crawl. He has no limitations as to balancing. He can frequently reach in all direction with both his upper extremities. He can do jobs that can be performed with occasional use of urinary incontinence protection. (R. 22).

**burden shifts to the ALJ in step five.**"[7] *Bright v. Kijakazi*, No. 21-60106-CIV, 2021 WL 5868469 at *7, (S.D. Fla. Nov. 23, 2021) (emphasis added). Here, Plaintiff continuously argues that the report contradicts the ALJ's RFC but fails to articulate how it specifically contradicts it or cite to any examples comparing the report's conclusions to the evidence in the record, including what the ALJ relied upon. At bottom, Plaintiff has failed to sufficiently articulate why he is incapable of performing his past relevant work (as generally performed) and how the Starr Report rebuts the evidence the ALJ relied upon to a point where, if taken into consideration, it would have likely changed the ALJ's decision.

Consequently, the Court finds that there is substantial evidence to support the ALJ's decision and that Plaintiff has failed to meet his burden in proving that the Starr Report is material[8] evidence, and that he is unable to perform his past relevant work (as

---

[7]      Here, the sequential evaluation ended at step four because the ALJ found that Plaintiff had (and is able to do) past relevant work. (R. 18–19; 22–30) "If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step." *Id.* at 19.

[8]      "[W]hen the [AC] erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321. The evidence it "must consider [includes] new, material, and chronologically relevant evidence" that the claimant submits. *Washington*, 806 F.3d at 1320. Material evidence "if accepted, [creates] 'a reasonable possibility' that [it] '**would** change the administrative result.'" *Id*. at 1321 (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (emphasis added)). And as explained above, Plaintiff has insufficiently supported his argument that the Starr Report would change the administrative result. Therefore, rendering the Starr Report as immaterial and relieving the AC from having to consider it.

generally performed. Therefore, the Court **grants** Defendant's Motion [ECF No. 8], **affirms** the Commissioner's decision, and **denies** Plaintiff's Motion [ECF No. 7]. The Clerk of Court is directed to **enter** a final judgment in favor of Defendant and **close** this case.

      **DONE AND ORDERED** in Chambers, in Miami, Florida, on June 30, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record